McGOUGH v. FINLEY. (No. 8217.) *

(Court of Civil Appeals of Texas. Ft. Worth. June 19, 1915. Rehearing Denied Oct. 16, 1915.)

1. HOMESTEAD ☞117 — CONVEYANCE — CONSENT OF WIFE—STATUTE.

Under Rev. St. 1911, art. 1115, providing that the homestead of the family shall not be sold and conveyed by the owner, if a married man, without the consent of his wife, where two lots were the business homestead of one of the incorporators of a corporation, he agreeing to transfer them to the company in return for a portion of its stock, which was issued to him, neither the application for the charter nor the affidavit thereto being executed by the incorporator's wife, title to such lots did not pass from the incorporator to the company.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 191–202; Dec. Dig. ☞117.]

2. FRAUDS, STATUTE OF ☞69 — CONVEYANCE OF LAND—NECESSITY FOR WRITING.

Under Rev. St. 1911, art. 1103, providing that no estate in land shall be conveyed unless the conveyance be declared by instrument in writing, where an incorporator orally agreed to transfer two lots to the company in return for a portion of its stock, which was issued to him, the lots not being designated either on the company's charter or the affidavit thereto, title to such lots did not pass from the incorporator to the company.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 83, 111; Dec. Dig. ☞69.]

3. FRAUDULENT CONVEYANCES ☞295—CHARACTER AS SUCH—SUFFICIENCY OF EVIDENCE.

In trespass to try title, evidence held sufficient to justify jury's finding that the conveyance of the premises to defendant was fraudulent as to the grantor's creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–875; Dec. Dig. ☞295.]

Appeal from District Court, Stonewall County; John B. Thomas, Judge.

Suit by George P. Finley against J. M. McGough. Judgment for plaintiff, and defendant appeals. Affirmed.

C. P. Chastain, of Hamlin, and Jas. P. Kinnard and H. G. McConnell, both of Haskell, for appellant. W. R. Sawyer, J. M. Carter, of Aspermont, and Chapman & Coombes, of Anson, for appellee.

DUNKLIN, J. Geo. P. Finley instituted this suit in the form of trespass to try title against J. M. McGough, J. W. McGough, A. F. McGough, and Sam Rash, to recover a section of 640 acres of land situated in Stonewall county. All the defendants except J. M. McGough filed disclaimers, and from a

judgment in favor of the plaintiff for the land, that defendant has appealed.

Plaintiff and J. M. McGough each claimed title through J. W. McGough as the common source; the plaintiff claiming under an execution sale against J. W. McGough, and J. M. McGough claiming title under a deed of conveyance from J. W. McGough antedating the execution sale. The sale to plaintiff was under and by virtue of an execution levied upon the property under a judgment in favor of August A. Busch & Co., dated June 23, 1909, rendered by the district court of Tarrant county, Tex., against J. W. McGough and others for the sum of $575.91, with 6 per cent. interest and costs of suit. That sale was made February 4, 1913, the execution having been levied upon the property December 27, 1912. The deed from J. W. McGough to J. M. McGough, under which J. M. McGough claimed title, was dated December 2, 1910, and duly recorded in the deed records of Stonewall county on December 5, 1910. The consideration recited in that deed was as follows:

"One thousand ($1,000.00) dollars, paid by J. M. McGough, receipt whereof is hereby acknowledged and fully confessed."

The conveyance to J. M. McGough by J. W. McGough was attacked by the plaintiff upon the ground that it was made for the purpose of defrauding the creditors of J. W. McGough, and therefore void, and that was the principal issue upon the trial. On January 22, 1910, J. W. McGough, J. M. McGough, A. F. McGough, and J. W. Reese applied for and obtained a charter for a private corporation under the name of the Hamlin Transfer Company. The business for which the corporation was formed was the establishment and maintenance of a line of stages, and its place of business was in Hamlin, Jones county, Tex. J. M. McGough and A. F. McGough were sons of J. W. McGough, and J. W. Reese his son-in-law, all of whom resided in Hamlin. The directors named in the charter were J. W. McGough, J. W. Reese, and J. M. McGough, and J. W. McGough was thereafter made president of the company. The charter of the corporation contains the following:

"The amount of capital stock is ten thousand ($10,000) dollars, divided into one hundred (100) shares of one hundred ($100.00) dollars each, all of which capital has been subscribed and 100 per cent. paid in, as per affidavit attached hereto."

The affidavit of J. W. McGough, J. M. McGough, A. F. McGough, and J. W. Reese, attached to the charter, contained the statement that the parties had subscribed for stock in the following amounts, to-wit:

| | |
|---|---|
| J. W. McGough | $5,000 |
| J. W. Reese | 1,700 |
| J. M. McGough | 1,700 |
| A. F. McGough | 1,600 |

—and that all of said stock had been fully paid in property; the subscription of J. W. McGough for $5,000 being paid with lots 9 and 10, block 55, in the town of Hamlin, with barns, stall, sheds, and carriage houses, all valued at $5,000; that the subscription of J. M. McGough was paid by lot 8, block 55, in the town of Hamlin, valued at $1,700; and the subscriptions of J. W. Reese and A. F. McGough were paid with eight head of horses, valued at $1,200, and three transfer busses and one transfer wagon and harness, all valued at $2,100. At the time the parties applied for the charter of the Hamlin Transfer Company they were jointly engaged as partners in the transfer business in the town of Hamlin, and after the incorporation continued in the same business in the corporate name. The evidence shows that J. W. McGough was at that time a married man, the head of a family, residing in the town of Hamlin, and that lots 4 and 5 in the town of Hamlin constituted his business homestead; and according to the testimony of J. W. McGough those lots were the lots which J. W. McGough intended to convey to the corporation, instead of lots 9 and 10 in block 55, as described in the affidavit attached to the charter. Those lots and lot 8 in the same block, which according to the affidavit attached to the charter was conveyed to the corporation in payment of J. M. McGough's stock, were used by the incorporators in connection with the transfer business at the time they decided to incorporate the business. The horses, vehicles, and harness, referred to in the affidavit as transferred to the corporation in payment of the stock subscribed by J. W. Reese and A. F. McGough, had likewise been in use in the same business previously transacted by the partnership firm. After the incorporation, the Hamlin Transfer Company used the three lots and the other property mentioned in the affidavit in conducting its business. The only instrument of writing signed by J. W. McGough relating to or evidencing the supposed rights of the corporation in and to lots 9 and 10 was the application for the charter and the affidavit attached thereto. J. W. McGough testified that after the incorporation he worked for the company on a salary as its president, and was not engaged in any transfer or livery business upon his own individual account, and never intended to so engage in business after the incorporation of said company. The evidence further shows that J. W. McGough never at any time executed any deed of conveyance to the corporation transferring said lots 4 and 5, but, on the contrary, on December 2, 1910, the same day he conveyed the land in controversy to J. M. McGough, by warranty deed he conveyed those lots to his son, J. M. McGough, in which a consideration of $1,000 was acknowledged; the deed being filed for record in Jones county on December 3, 1910, after being duly acknowledged. Those two deeds, if effective, operated to strip J. W. McGough of all his property subject to execution, except the stock he held in the Hamlin Transfer Company. On August 16, 1909, an abstract of the

judgment in favor of August A. Busch & Co. against J. W. McGough mentioned above was duly filed for record in the office of the county clerk of Jones county.

On September 30, 1912, J. M. McGough filed in the district court of Jones county a petition for the issuance of a writ of injunction to restrain the sheriff and constable of that county from selling lots 4 and 5 under execution, which, according to the allegations in the petition, had been duly issued on the judgment in favor of Busch & Co. against J. W. McGough and had been levied upon said lots 4 and 5. In that petition plaintiff further alleged that on the 2d day of December, 1910, the date of the deed from J. W. McGough to J. M. McGough, the said J. W. McGough was seised and possessed of said lots in fee-simple title; that at that time J. W. McGough resided in Hamlin, was the head of a family, and owned and claimed said lots as his business homestead; that he was then engaged in the livery business for hire as a means of livelihood, and controlled and managed the same; that said lots 4 and 5 were then exempt to him as a business homestead under the Constitution and laws of the state of Texas. The petition further alleged the filing of other abstracts of said judgment in Jones county, all of which cast a cloud upon the title of J. M. McGough, who had purchased the property on December 2, 1910, from J. W. McGough for the purpose of sale and exchange, paying a valuable consideration therefor. The petition was signed and sworn to by J. M. McGough; the affidavit signed by him containing the statement that the matters set forth in the petition were true. There was issued to J. W. McGough $5,000 worth of the stock in the Hamlin Transfer Company, but he has never paid any consideration therefor, unless the company acquired title to lots 4 and 5 in the town of Hamlin under and by virtue of the statements contained in the charter, and in the affidavit attached thereto, all over the signature of J. W. McGough.

The trial was before a jury, to whom was submitted special issues. The findings of the jury were as follows:

(1) Just prior to the execution of the two deeds from J. W. McGough to J. M. McGough of date December 2, 1910, one conveying the survey of land in controversy in this suit, and the other conveying lots 4 and 5 in the town of Hamlin, J. W. McGough was indebted to J. M. McGough in the sum of $800.

(2) On December 2, 1910, the reasonable cash market value of said lots 4 and 5 was $2,000.

(3) On December 2, 1910, when J. W. McGough executed to J. M. McGough the deed to the section of land of 640 acres in controversy, the reasonable cash market value of that property was $20 per acre.

The remaining issues submitted to the jury, together with the findings thereon, are as follows:

"Fourth Issue. On December 2, 1910, what was the indebtedness of J. W. McGough? In this connection you are instructed that in the amount you may find in answering this question you will not include the claim of J. M. McGough against J. W. McGough. And you are instructed, further, that if you find from the evidence that in incorporating the Hamlin Transfer Company it was understood that J. W. McGough was to put in said transfer company the title to said lots 4 and 5 at a valuation of $5,000, and that by reason thereof J. W. McGough was to receive $5,000 worth of stock of the said Hamlin Transfer Company, then the court charges you as a matter of law that title to said lots did not reach the Hamlin Transfer Company, and thereby, if such were the facts, J. W. McGough on said date would be indebted to the Hamlin Transfer Company in the sum of $5,000 unpaid subscription on his stock in said transfer company, and if the facts so be, in finding the amount of the indebtedness of J. W. McGough, you will include herein the said sum of $5,000.

"Answer. Six thousand five hundred nine and $^{91}/_{100}$ dollars.

"Fifth Issue. On December 2, 1910, what was the reasonable cash market value of the property belonging to the Hamlin Transfer Company? In this connection you are instructed that said lots Nos. 4 and 5 were not the property of the Hamlin Transfer Company, and in determining this question you will not include the value of said lots Nos. 4 and 5. But you are further instructed that lot No. 6 referred to in the evidence was the property of the Hamlin Transfer Company, and in answering this you will include the value of said lot No. 6.

"Answer. Three thousand dollars.

"Sixth Issue. Our statute, in effect, provides that every gift, or conveyance, of property given or made with intent to delay, hinder, or defraud creditors shall be void. In this connection I charge you that the judgment in favor of August A. Busch & Co. was a valid claim and judgment against J. W. McGough, and that the transfer by J. W. McGough of the property belonging to him and subject to execution would delay and hinder said Busch & Co. in the collection of their said judgment, yet such conveyance would not be fraudulent unless in making such conveyance said J. W. McGough did so with intent to delay, hinder, or defraud his creditor or creditors, nor can you find such conveyance fraudulent unless you find from the evidence the existence of the following conditions, to wit: That in conveying said section of land in Stonewall county to J. M. McGough, J. W. McGough did so with intent to delay, hinder, or defraud his creditors, or to defraud said Busch & Co., and that J. M. McGough at the time of the conveyance of said section to him by the said J. W. McGough, had notice of such intent on the part of J. W. McGough, if such was his intent, or that J. M. McGough had knowledge of the facts and circumstances such as would have put an ordinarily prudent man upon inquiry, which, by the use of proper diligence on his part would have led to the knowledge of such intention on the part of J. W. McGough, if such was his intention. Now, bearing in mind the above essential conditions, you will answer by yes or no, as you may find from the evidence, the sixth special issue following: Was the conveyance of the section of land in Stonewall county by J. W. McGough to J. M. McGough a fraudulent conveyance?

"Answer. Yes.

"Seventh Issue. What was the consideration of the deed from J. W. McGough to J. M. McGough, conveying said lots 4 and 5?

"Answer. Four hundred dollars.

"Eighth Issue. What was the consideration for the deed made by J. W. McGough to J. M. McGough, conveying the section of land in Stonewall county?

"Answer. Four hundred dollars.

"Ninth Issue. Did J. M. McGough pay J. W. McGough a full valuable consideration for the conveyance of the Stonewall county land, and

after that conveyance was there left in the hands of the said J. W. McGough a sufficient amount of property subject to execution to satisfy his debts?

"Answer. No."

[1, 2] By different assignments of error the contention is made that the court erred in peremptorily instructing the jury that the title to lots 4 and 5 never passed from J. W. McGough to the Hamlin Transfer Company, and that McGough was still indebted to that company in the amount of his subscription for stock. The contention is based upon the proposition that title to lots 4 and 5 necessarily passed by reason of the fact that J. W. McGough, at the time of the incorporation of the Hamlin Transfer Company, intended no longer to occupy lots 4 and 5 as the place for continuing the livery business for his individual benefit, or for the benefit of the partnership firm of J. W. McGough & Sons; that he contracted to convey the property to the corporation, and after its incorporation he accepted stock from the corporation in the sum of $5,000; that the corporation thereafter took charge of the said lots, occupying and using the same in its business, with said J. W. McGough acting as its president. Appellant insists that, at all events, the issue whether or not title passed to the Hamlin Transfer Company should have been submitted to the jury as a controverted issue, and should not have been determined by the court, as was done.

The evidence does not show, neither is it contended by appellant, that any improvements were ever placed upon the property by the Hamlin Transfer Company. It is also undisputed that lots 4 and 5, at the time of the incorporation of the Hamlin Transfer Company, were the business homestead of J. W. McGough, and that neither the application for the charter, nor the affidavit attached thereto, was executed by his wife, nor were said lots designated either in the charter or in the affidavit attached thereto. Under such circumstances we fail to understand how it can be said that title to lots 4 and 5 passed from J. W. McGough to the Hamlin Transfer Company, especially in view of the fact that several months after the stock in the Hamlin Transfer Company was isued to J. W. McGough he conveyed lots 4 and 5 to J. M. McGough, appellant herein, who afterwards sought to enjoin the sale thereof upon a petition, verified by him, alleging facts squarely contrary to the contention now made by him in the present suit, as noted above, and we are of the opinion that the trial court did not err in instructing the jury that title to those lots never passed to the Hamlin Transfer Company. Revised Statutes 1911, arts. 1103, 1115; Altgelt v. Escalera, 51 Tex. Civ. App. 108, 110 S. W. 989, and authorities there cited; 16 Cyc. 685.

[3] By another assignment appellant insists that there was no evidence to justify the finding by the jury, in answer to the sixth special issue, in effect, that the conveyance of the land in controversy by J. W. McGough to J. M. McGough was fraudulent. Appellant insists that the evidence shows without controversy that at the time of the execution of that conveyance neither J. W. McGough nor J. M. McGough had any notice of the judgment in favor of August A. Busch & Co., nor of any other indebtedness then owing by J. W. McGough to any one, aside from his indebtedness to J. M. McGough, to satisfy which the deeds to the land in controversy and to lots 4 and 5 in the town of Hamlin were executed.

While the testimony of appellant and J. W. McGough was, in effect, that they knew nothing of any indebtedness then owing by J. W. McGough to any one, except his indebtedness to his son, J. M. McGough, yet the jury were not bound to accept such testimony as true. Notwithstanding such statements by those two witnesses, there were circumstances tending strongly to rebut it. We shall not undertake to refer to all of such circumstances, but will mention some of them. According to the undisputed evidence J. W. McGough, for a pre-existing debt of $800, owing to his son, J. M. McGough, conveyed property of the value of $14,800, thus stripping himself of all property subject to execution, except the $5,000 worth of stock held by him in the Hamlin Transfer Company, for which he had never paid that company any consideration. The evidence further shows that J. M. McGough, who is a single man, had lived with his father in the town of Hamlin for several years, and had been associated with him in business. An abstract of judgment in favor of August A. Busch & Co. was duly filed for record in Jones county, where J. M. and J. W. McGough resided. J. M. McGough testified, in part, as follows:

"As to the children that J. W. McGough had on the 2d day of December, 1910, will say that he had five children, all married at that time, except me. * * * As to all the conversations that I have had with J. W. McGough concerning the deeds that he made to me on December 2, 1910, since that time, and as to what has been said about property, etc., will say that I could not say what all has been said between J. W. McGough and myself since that time, as we are together most of the time and talk about everything nearly that either one of us is interested in."

But he further stated in that connection as follows:

"I was figuring on leaving home at the time, and my father did not have the money to settle with me, and he and my mother wanted me to stay with them and told me that they would square up with me, and would give me the land and the lots, if I would stay with them, and help take care of them, and not leave home."

Plaintiff also introduced testimony showing the contents of a letter written by J. W. McGough to the tax assessor of Stonewall county, in which the land in controversy was situated, in effect, requesting the assessor to

put the land in controversy on the tax rolls for assessment for the year 1912. Appellant, J. M. McGough, testified that he had never rendered the land for taxes. J. W. McGough admitted on the stand that he was served with citation in the suit of Busch & Co., although he further testified that after receiving that citation he talked with G. W. Bills, the principal debtor defendant in that suit, who afterwards informed him that the suit had been settled, and that there never would be any judgment rendered against him, and that he did not know anything to the contrary until he saw Mr. Sawyer (attorney for Busch & Co.) in Hamlin in 1911. In addition to those circumstances, there was the further fact that J. M. McGough, with full knowledge that J. W. McGough never contemplated paying anything for his $5,000 worth of stock in the Hamlin Transfer Company, except said lots 4 and 5, took a deed of conveyance to that property after the issuance of the stock, and asserted title under that deed adversely to the company. Ullman v. Crenshaw (Sup.) 16 S. W. 1012; Brasher v. Jamison, 75 Tex. 139, 12 S. W. 809.

The judgment is affirmed.